**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**WILLIAM H. TANKERSLEY,**
        **Petitioner,**

**vs.**                                                    **Case No. 3:09cv22/MCR/MD**

**SCOTT P. FISHER,**
            **Respondent.**

_____

## REPORT AND RECOMMENDATION

Petitioner commenced this action on January 13, 2009 by filing a petition for writ of habeas corpus under 28 U.S.C. § 2241.  (Doc. 1).  The government has filed a response (doc. 10), and petitioner has replied  (doc. 12).  For the reasons that follow, the undersigned recommends that the petition be dismissed for petitioner's failure to properly exhaust his administrative remedies.

## BACKGROUND

Petitioner is a federal inmate who was sentenced in the United States District Court for the Northern District of Indiana to serve a 57-month term of imprisonment for violating 18 U.S.C. § 371, Conspiracy to Defraud the United States; 18 U.S.C. § 1341, Mail Fraud; 18 U.S.C. § 1957, Money Laundering; and 26 U.S.C. § 7206, Filing False Tax Returns.  He is currently designated to a Residential Re-entry Center ("RRC") in Tampa, Florida.  At the time he filed this petition he was housed at a Federal Prison Camp ("FPC") in Pensacola, Florida.  He is scheduled for release via good time credit on August 4, 2009.  (Doc. 1; Doc. 10, Schuh Aff. ¶ 3).

The instant petition involves petitioner's alleged entitlement to an early release incentive pursuant to 18 U.S.C. § 3621(e). The Federal Bureau of Prisons (BOP) offers drug abuse treatment programs to inmates, such as the Residential Drug Abuse Treatment Program (RDAP). 28 C.F.R. § 550.53. RDAP consists of three separate components: a unit based residential program lasting a minimum of 500 hours, an institution transition phase, and a community-based transitional services phase. 28 C.F.R. § 550.53; *see also* Doc. 10, Schuh Aff. ¶ 14. Inmates who have completed all three components of RDAP may be eligible for an early release incentive pursuant to 18 U.S.C. § 3621(e). *See* 18 U.S.C. § 3621(e)(2)(B); 28 C.F.R. § 550.54(a)(1)(iv); *see also* Doc. 10, Schuh Aff. ¶ 15. Inmates may be removed or expelled from RDAP for various reasons, including disruptive behavior related to the program or unsatisfactory progress in treatment. 28 C.F.R. § 550.53(g)(1).

The petitioner here claims he is entitled to early release under § 3621(e), because he successfully completed the RDAP program as evidenced by a diploma he received on August 21, 2008. (Doc. 1, p. 3 and Mem. p. 2). He states that the BOP provisionally granted him eligibility for early release, scheduled him for early release to a community halfway house on August 26, 2008, and scheduled him for release to probation 180 days later, February 22, 2009. (Mem. p. 2). However, prior to his release to a halfway house, the "RDAP head" Dr. Lewis terminated his early release and required him to re-take the RDAP program, because petitioner neglected to shake hands with all of the staff members who presented diplomas on August 21, 2008. (Doc. 1, p. 3). Petitioner states he declined to re-take the program. Nonetheless, an RDAP official (Ms. Penfold) insisted that he was in her new RDAP class program and ordered him to report to her office for assignments. When petitioner did not comply, she wrote two incident reports which resulted in extra work.

As his first claim for relief petitioner contends that the termination of his § 3621(e) early release incentive (sentence reduction and halfway house period)

violated his Fifth Amendment right to equal protection because it was vindictive, unauthorized under BOP regulations, and because "[a]t past RDAP graduations, not all RDAP inmates elected to shake hands with staff," yet they were not sanctioned in this way. (Doc. 1, p. 3 and Mem., pp. 4-5, 8). As his second ground for relief, petitioner contends that the decision to revoke his § 3621(e) early release incentive was arbitrary and capricious and violated his expected liberty interest. (Doc. 1, p. 4 and Mem., pp. 5-11). As relief, petitioner seeks either an order restoring his sentence reduction under 18 U.S.C. § 3621(e), or an order authorizing his transfer to an RRC. (Doc. 1, p. 6). Attached to the petition are copies of petitioner's administrative remedy requests relating to the termination of his early release, as well as his appeals of the two incident reports.

Respondent contends petitioner failed to properly exhaust his administrative remedies with respect to his claims, that the petition is moot because petitioner was transferred to an RRC on March 4, 2009, and that petitioner's claims do not entitle him to habeas relief, because he did not successfully complete all components of the RDAP program. (Doc. 10).

In his reply, petitioner argues that he did exhaust his administrative remedies, that his petition is not moot because although he has been released to an RRC his sentence reduction has not been restored, and that his claims warrant habeas relief. (Doc. 12).

## DISCUSSION

<u>Exhaustion of administrative remedies</u>

Although the exhaustion requirement of the Prison Litigation Reform Act (PLRA) does not apply to habeas petitions, it is well established that prisoners must exhaust administrative remedies before habeas relief can be granted, including relief pursuant to § 2241. *Skinner v. Wiley*, 355 F.3d 1293, 1295 (11th Cir. 2004) ("[A] prisoner is . . . required to exhaust his administrative remedies in all habeas

cases."); *Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632, 634 (2nd Cir. 2001) (addressing § 2241 petition); *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (addressing § 2241 petition); *Little v. Hopkins*, 638 F.2d 953, 953-54 (6th Cir. 1981) (discussing habeas petitions in general); *United States ex rel. Sanders v. Arnold*, 535 F.2d 848, 850-51 (3rd Cir. 1976) (same); *Willis v. Ciccone*, 506 F.2d 1011, 1014-15, n. 3 (8th Cir. 1974) (same). This requirement is jurisdictional. *Winck v. England,* 327 F.3d 1296, 1300 n.1 (11th Cir. 2003) (recognizing that although there is no statutory requirement that a federal inmate exhaust his administrative remedies prior to filing a § 2241 writ of habeas corpus, exhaustion is jurisdictional in the Eleventh Circuit); *Gonzalez v. United States*, 959 F.2d 211, 212 (11th Cir. 1992) (per curiam) (same). Specifically with regard to early release issues under 18 U.S.C. § 3621(e), the statute provides that the BOP possesses the exclusive authority to reduce an eligible inmate's sentence after successful completion of a drug treatment program.[1] An inmate is required to exhaust administrative remedies before seeking habeas relief, rather than doing so while a petition is pending. *Meagher v. Dugger*, 737 F.Supp. 641, 643 (S.D. Fla. 1990); *see also Woodford v. Ngo*, 548 U.S. 81, 88, 126 S.Ct. 2378, 2384, 165 L.Ed.2d 368 (2006) (examining the Prison Litigation Reform Act and holding that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court."); *see also id.*, 548 U.S. at 90-91, 126 S.Ct. at 2386 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function

---

1 **Section 3621(e) provides that if an inmate completes a drug and alcohol treatment program authorized under 18 U.S.C. § 3621(e),**

> **The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.**

**18 U.S.C. § 3621(e)(2)(B).**

effectively without imposing some orderly structure on the court of its proceedings.").

The BOP provides a four-level administrative grievance procedure for prisoner complaints. 28 C.F.R. § 542.10-542.19.  This procedure applies to inmates seeking formal review of complaints regarding the operation of the drug abuse treatment program. 28 C.F.R. § 550.57.  Each of these steps is generally required to satisfy the exhaustion prerequisite.

Initially, a prisoner must seek resolution of an issue through an informal grievance. 28 C.F.R. § 542.13(a).  If dissatisfied, the inmate may file a formal written complaint with the institution. *Id.* at § 543.13(b).  An appeal may then be taken to the Regional Director.  28 C.F.R. § 542.15.  A Regional Director has 30 calendar days from the date of receipt in which to respond.  28 C.F.R. § 542.18.  Finally, an inmate may appeal the Regional Director's response to the General Counsel for the BOP. 28 C.F.R. § 542.15.  The General Counsel has 40 calendar days from the date of receipt in which to respond.  28 C.F.R. § 542.18.  If the inmate does not receive a response within the time allotted, including extension, the inmate may consider the absence of a response to be a denial at that level. *Id.*

A remedy request that does not meet program requirements may be rejected by an administrative remedy coordinator at any level and returned to the inmate.  28 C.F.R. § 542.17.  A coordinator who rejects a request must provide the inmate written notice explaining the reason for the rejection. *Id.*  If the reason for the rejection is correctable, the notice shall inform the inmate of a reasonable time extension to resubmit the request. *Id.*  The BOP lists the reasons for rejection and the time extension options in a Technical Reference Manual. (Doc. 10, Schuh Aff. ¶ 7, Attach. 2).  The General Counsel's office maintains a record of the remedy requests and responses at each level. (Doc. 10, Schuh Aff. ¶ 6).

The evidence in the record establishes the following with respect to exhaustion.  On August 26, 2008, petitioner submitted an informal grievance to Dr.

Lewis requesting the reason(s) for termination of his early release benefit under § 3621(e). (Doc. 1, Ex. 3). On September 25, 2008, petitioner filed a formal written complaint with the institution. The Warden denied petitioner's request on October 15, 2008. (Doc. 10, Schuh. Aff. ¶ 9 and Attach. 4). Petitioner appealed. The Regional Director received petitioner's appeal (dated October 19, 2008) on October 23, 2008, and rejected it on October 31, 2008. (Doc. 1, Attach. 4, Rejection Notice; Doc. 10, Schuh Aff. ¶ 10 and Attach. 4). The written rejection notified petitioner of the reason (he may only submit one continuation page equivalent of one letter-size (8 ½" x 11') paper, text must be on one side, and the text must be legible), and further notified him that he had 10 days to resubmit his appeal in proper form. (*Id.*).

On November 7, 2008, petitioner signed his re-submission to the Regional Director. (Doc. 1, Attach. 4, p. 13 in CM/ECF). The Regional Director received petitioner's re-submission on November 13, 2008, and rejected the appeal 21 days later on December 4, 2008. (Schuh Aff. ¶ 11 and Attach. 4). The written rejection notified petitioner of the reason (he did not submit the proper number of continuation pages with his appeal), and that he had 10 days to resubmit his appeal in proper form. (*Id.*). Petitioner did not re-submit his appeal to the Regional Director.

On December 5, 2008, petitioner signed an appeal to the General Counsel's office, stating that he was exercising his right to appeal to the next level because there had been no response to his October 23, 2008 appeal to the Regional Director. (Doc. 1, Attach. 5, titled "BP-10&11"). The General Counsel received petitioner's appeal on December 18, 2008, and rejected it on January 1, 2009. (Schuh Aff. ¶ 12 and Attach. 3, 4). The written rejection notified petitioner of the reason (he submitted his appeal to the wrong level because he should have re-submitted his appeal to the Regional Director). (*Id.*). Petitioner did not re-submit his appeal to the Regional Director or to the General Counsel. Instead, he commenced the instant habeas corpus proceeding on January 13, 2009. (Doc. 1, p. 6). Based on the foregoing, the undersigned concludes that petitioner failed to exhaust his administrative remedies

concerning his early release claims prior to applying for habeas corpus relief in this court.

Petitioner addresses the exhaustion issue in his reply. He maintains that he "met all response times . . . [and] completed all resubmissions," (doc. 12, p. 6), citing Exhibits 5 and 6 attached to his petition. The court has reviewed those exhibits. They do not establish that petitioner completed all re-submissions. Exhibit 5 consists of a log or index petitioner prepared concerning his administrative remedy filings, as well as copies of those filings. (Doc. 1, Attachs. 3-7 in CM/ECF). The exhibit confirms that petitioner re-submitted only one appeal -- that received by the Regional Director on November 13, 2008. It provides no documentation of petitioner re-submitting his appeal to the Regional Director following the December 4, 2008 and January 1, 2009 rejection notices. Nor does it provide documentation of petitioner re-submitting an appeal to the General Counsel's office following the January 1, 2009 rejection notice. Petitioner's Exhibit 6 consists of a log or index petitioner prepared of his remedy requests concerning the two incident reports prepared by Ms. Penfold. (Doc. 1, Attach. 7, p. 26 through Attach. 8 in CM/ECF). The exhibit provides no documentation of petitioner re-submitting his appeals following the December 4, 2008 and January 1, 2009 rejection notices.

Petitioner asks rhetorically in his reply why, if his 509859-A1 appeal to the General Counsel's office was rejected, the respondent did not provide a copy of the rejection notice with respondent's answer. (Doc. 12, p. 6). Petitioner contends the documentation respondent provided "does not create a verifiable record." (*Id*.).

The court finds that the BOP's documentation is verified and credible. The BOP has provided a copy of the administrative remedy index of petitioner's remedy requests. The records are authenticated by Sarah M. Schuh, an Honors Attorney with the BOP. (Doc. 10, Schuh Aff., Attach. 3). The administrative remedy index records the following information (and more) concerning each remedy request: the identity of the request, the name and number of the prisoner submitting the request,

the subject of the request, the date it was received by the Warden/Regional Director/General Counsel, the date a response was due (if the request was accepted as in compliance with procedural rules), the status of the request, the date it acquired that status, the reason it acquired that status, and any remarks. (Doc. 10, Attach. 3). The index documents all of the facts outlined above concerning petitioner's attempts at exhaustion, and sufficiently establishes the fact of the rejection notices, including the reasons for rejection.

Petitioner does not allege, much less assert under oath, that the BOP failed to deliver the rejection notices to him; rather, he appears merely to refuse to acknowledge them because he believes them unfounded and improper. For example, despite the respondent's documentary evidence proving issuance of the rejection notices, petitioner continues to argue in his reply that the BOP has been "nonresponsive" to his remedy requests (doc. 12, p. 6), and that the BOP "purposely abated deadlines by not filing responses," (*id.*, p. 7).[2] He argues further that "the Respondent has placed hoops to jump through in the form of technical, trivial, and even non existent 'rejection reasons.'. . . Indeed, even the [Respondent's Answer at] Attachment 2 provides the BOP's smorgasbord of prepared boiler plate statements for rejection." (*Id.*, p. 6).[3] Finally, he contends, "Mr. Tankersley adequately exhausted his administrative remedies, even waiting beyond the policy deadline at times for a response before going to the next level or back to court. When there was no response, he correctly advanced his complaint under BOP PS 1330.13 and 28 C.F.R. § 543.15 [sic]." (*Id.*, p. 7).

---

2 Similarly, on the log/index petitioner submitted as part of Exhibit 5, a document which is neither sworn nor verified, petitioner notes that there was "no response" to his resubmitted appeal dated November 7, 2008 (received by the Regional Director on November 13, 2008), and "no response" to his appeal to the General Counsel's office dated December 5, 2008 (received by the General Counsel's office on December 18, 2008). (Doc. 1, Attach. 3 in CM/ECF, Ex. 5).

3 Attachment 2 is the Technical Reference Manual.

Petitioner's argument is without merit. The BOP is not required to respond to an appeal unless and until the appeal is submitted in proper form and in compliance with the administrative remedy procedures. *See* 28 U.S.C. § 542.17 (authorizing a coordinator at any level to "reject and return to the inmate <u>without response</u> a Request or an Appeal that is written by an inmate in a manner that is obscene or abusive, or does not meet any other requirement of this part.") (emphasis added); 28 C.F.R. § 542.15 (prescribing the proper form for appeals to the Regional Director and General Counsel). Even if the court completely ignored the BOP's evidence and assumed that the December 4, 2008 and January 1, 2009 rejection notices never existed and the BOP simply failed to respond to petitioner's appeals, the instant habeas petition would still be subject to dismissal, because petitioner would be deemed to have initiated this lawsuit before giving the BOP a full opportunity to respond within the time frames specified by the Administrative Remedy Program.

The record demonstrates, and petitioner cannot genuinely dispute, that his re-submission to the Regional Director dated November 7, 2008 was received by the Regional Director on November 13, 2008. Thus, under the BOP's rules the Regional Director had 30 days, or until December 13, 2008, in which to respond. Petitioner did not wait the requisite 30 days before preparing his appeal to the General Counsel's office on December 5, 2008.[4] Additionally, once the General Counsel's office received petitioner's appeal on December 18, 2008, it had 40 days, or until January 27, 2009, in which to respond. Petitioner did not wait the requisite 40 days before submitting his habeas corpus petition on January 13, 2009.[5] Thus, even under a construction of the facts urged by petitioner (that the BOP failed to respond), the

---

[4] Although not relevant, it is noted that petitioner did not wait even 30 days from the date he <u>mailed</u> his remedy request to the Regional Director before he mailed his December 5, 2008 appeal.

[5] Again, petitioner did not wait even 40 days from the date he <u>mailed</u> his appeal before he delivered the instant habeas petition to prison officials for mailing.

record demonstrates that petitioner did not properly exhaust his administrative remedies before filing this lawsuit.

In light of the foregoing, the undersigned concludes that petitioner failed to exhaust his administrative remedies prior to applying for habeas corpus relief. Because petitioner did not exhaust his administrative remedies and did not provide the Regional Director or the General Counsel the opportunity to respond to an administrative remedy request, this court does not have the benefit of reviewing a decision by the Regional Director or the General Counsel on the issues raised here.

Petitioner has not demonstrated any sound reason for excusing his failure to exhaust his administrative remedies. He has not shown inordinate and prejudicial delay in the processing of his administrative remedy requests; the likelihood of irreparable harm at the time he filed the instant petition; or the futility of pursuing an administrative remedy.[6] Therefore, this case should be dismissed without prejudice to petitioner re-applying for habeas corpus relief upon exhaustion of his administrative remedies.

---

6 Although this district court has recognized that the § 2241 exhaustion requirement is judicially created, not statutory, and judicially created exhaustion requirements ordinarily are subject to narrow exceptions, including futility, "there are grounds for doubt that a futility exception is available on a § 2241 petition in this circuit." *Garcia v. Middlebrooks*, No. 5:08cv165/RH/MD, 2008 WL 2775951, at *1 (N.D. Fla. July 12, 2008) (citing *Jaimes v. United States*, 168 Fed. Appx. 356, 359 (11th Cir. 2006) ("Given our precedent that the exhaustion requirement in § 2241 cases . . . is jurisdictional, whether he may even assert a futility exception to the requirement is questionable."); *Winck*, 327 F.3d at 1300 n. 1); *see also Tankersley v. Fisher*, No. 3:08cv283/MCR/EMT, 2008 WL 4371797 (N.D. Fla. Sept. 22, 2008).

Even assuming that judicial waiver of the exhaustion requirement is available, petitioner fails to allege grounds for invoking it in this case. The fact that petitioner voluntarily interrupted and cut short the grievance process by prematurely filing this habeas corpus petition does not meet the burden of establishing extraordinary circumstances justifying waiver of the exhaustion requirement. *See Irwin v. Hawk*, 40 F.3d 347, 349 (11th Cir. 1994) (requiring exhaustion in prisoner civil rights case even when denial of claim is likely because "[l]ight[ ]ning may strike; and even if it doesn't in denying relief the Bureau may give a statement of its reasons that is helpful to the district court in considering the merits of the claim") (quoting *Greene v. Meese*, 875 F.2d 639, 641 (7th Cir. 1989)); *Gonzalez v. United States*, 959 F.2d at 212 (holding that the BOP's alleged failure to release an inmate on his presumptive release date did not excuse the prisoner's failure to exhaust).

<u>Mootness</u>

As noted earlier, the relief requested in the petition is restoration of petitioner's 18 U.S.C. § 3621(e) sentence reduction, "or" transfer to an RRC, "or" an evidentiary hearing, "and" any other relief the court deems proper. (Doc. 1, p. 6). The parties do not dispute that petitioner's request for transfer to an RRC is moot. However, petitioner contends that his request for a sentence reduction under § 3621(e) is not moot. As respondent points out, petitioner's request for relief literally lists a sentence reduction as an alternative remedy to an RRC transfer, not an additional one. However, because *pro se* pleadings must be liberally construed, and because respondent does not contend that the sentence reduction remedy is moot, the court declines to recommend dismissal of the petition on grounds of mootness.

Accordingly it is respectfully RECOMMENDED:

1. That the petition for writ of habeas corpus under 28 U.S.C. § 2241 (doc. 1) be DISMISSED without prejudice for petitioner's failure to exhaust his administrative remedies.

2. That the Clerk be directed to close the file.

At Pensacola, Florida this 20th day of July, 2009.


/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).